*492 OPINION OF THE COURT
George B. Ceresia, Jr., J.
Plaintiffs commenced the above-captioned action for damages arising out of the flooding of their property which is situated along the Quackenderry Creek in Rensselaer County. It is alleged that the design and construction of the 1-90 Interchange 8 Connector to Route 4 (1-90 Interchange), Town of North Greenbush, in Rensselaer County, upstream from plaintiffs’ property, was the cause of the flooding. Wetlands and natural ground cover on the 62-acre parcel were allegedly destroyed, causing an increase in the volume and velocity of surface water runoff. Two specific flooding events are alleged to have occurred: on July 26, 1995 and January 24, 1996.
Plaintiffs allege, inter alia, that the defendant engineers are responsible for plaintiffs’ damages as a result of their improper preparation of the environmental impact statement and improper design. Plaintiffs allege two causes of action against the defendant engineers: (1) that the actions of the defendant engineers amounted to a deliberate physical invasion of plaintiffs’ property and property rights constituting the creation of a nuisance; and (2) that the defendant engineers are liable to plaintiffs in damages due to their negligence in the performance of their engineering services.
Defendants, Clough Harbour and Associates (Clough Harbour) and M.J. Engineering, P. C. (M.J. Engineering), have made a motion to dismiss the complaint pursuant to CPLR 3211. Defendant Clough Harbour makes a variety of arguments in support of its motion including all of the following: that they made a careful and thorough engineering study of the flow of surface waters and related downstream impacts at the site; that there is no increased runoff from the site; that plaintiffs have not alleged a causal connection between the engineering services provided by Clough Harbour and the flooding which occurred on plaintiffs’ properties; that the flooding events which occurred on July 26, 1995 and January 24, 1996 were unusual weather events, the former being the equivalent of a 50-year storm and the latter being the equivalent of an 100-year storm; and that the defendant owed no duty of care to the plaintiffs.
Plaintiffs argue, inter alia, that Clough Harbour knew that the Quackenderry would be directly impacted by the construction but did not properly design and/or plan mitigation measures to counteract the impacts.
*493 The instant action is comprised of three separate actions which were consolidated by order dated March 31, 1997. The three separate actions were captioned (1) Dooris v City of Rensselaer; (2) McGee v City of Rensselaer; and (3) Hayes v City of Rensselaer.
Plaintiffs have raised a threshold issue with regard to the failure of defendant Clough Harbour to support its motion to dismiss with a copy of plaintiffs’ complaints. It is well settled that a copy of the pleading moved against is essential for determination of a motion to dismiss (see, Alizio v Perpignano, 225 AD2d 723, 724-725 [2d Dept 1996]; 344 E. 72 Ltd. Partnership v Dragatt, 188 AD2d 324 [1st Dept 1992]).
Defendant Clough Harbour argues that the issue is moot by reason of the inclusion in plaintiffs’ opposing papers of the supplemental complaint of Thomas McGee. Ordinarily, the court would not agree, since the complaints of the other plaintiffs might contain differing causes of action. In this instance, however, the cross-movants, M.J. Engineering, have furnished the missing complaints in their motion papers. The cross motions are based, in part, on the motion papers of Clough Harbour. Thus, there are common issues to the motions and cross motions. Since there is no bar to proceeding to a determination of the cross motions of M.J. Engineering, it would serve no useful purpose to refrain from a determination of the motions of Clough Harbour.
It is well settled that in response to a motion pursuant to CPLR 3211, pleadings shall be liberally construed, the facts as alleged accepted as true, and every possible favorable inference given to plaintiffs (see, Leon v Martinez, 84 NY2d 83, 87). On such a motion, the court is limited to examining the pleading to determine whether it states a cause of action (see, Guggenheimer v Ginzburg, 43 NY2d 268, 275). In examining the sufficiency of the pleading, the court must accept the facts alleged therein as true and interpret them in the light most favorable to the plaintiff (see, Matter of Board of Educ. v State Educ. Dept., 116 AD2d 939 [3d Dept 1986]). Only affidavits submitted by the plaintiff in support of his or her causes of action may be considered on a motion of this nature (see, Rovello v Orofino Realty Co., 40 NY2d 633, 635-636). On such a motion, the court’s sole inquiry is whether the facts alleged in the complaint fit within any cognizable legal theory, not whether there is evidentiary support for the complaint (see, Leon v Martinez, 84 NY2d 82, 87-88; Pietrosanto v NYNEX Corp., 195 AD2d 843, 844).
*494 With respect to plaintiffs’ cause of action in nuisance, it is well settled that everyone who creates a nuisance or participates in the creation of a nuisance is liable therefor (see generally, 81 NY Jur 2d, Nuisances, § 52, at 378-380; Penn Cent. Transp. Co. v Singer Warehouse & Trucking Corp., 86 AD2d 826, 828 [1st Dept 1982]; Hine v Aird-Don Co., 232 App Div 359, 360 [3d Dept 1931]). In this instance, the three supplemental complaints allege that the defendant engineers performed services in connection with the planning and design of the 1-90 Interchange. While it is true that plaintiffs allege that the defendants participated in the over-all design and planning of the construction project, it is not alleged that defendants were involved in any of the actual physical construction of the 1-90 Interchange and/or the resulting alleged nuisance. The court concludes that the allegations contained in the supplemental complaints, which allege participation in the design of the project, but do not allege participation in the physical construction thereof and/or physical construction of the alleged nuisance, fail to state a cause of action. The cause of action sounding in nuisance must therefore be dismissed.
With respect to the cause of action in negligence, there is considerable legal authority for the proposition that an engineer or architect may be held liable where his or her negligence has caused personal injury to another (see, e.g., Inman v Binghamton Hous. Auth., 3 NY2d 137 [1957]; see generally, 76 NY Jur 2d, Malpractice, § 28, at 39-40). Courts, however, have long differentiated between causes of action for personal injury and other causes of action, recognizing that different public policy considerations are involved (see, Eaves Brooks Costume Co. v Y.B.H. Realty Corp., 76 NY2d 220, 223 [1990] [commercial tenant has no cause of action in property damage against companies which contracted with building owner to maintain defective fire sprinkler system which caused water damage due to flooding]; Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579 [1994] [upholding cause of action for personal injury against maintenance company hired by building owner]; Hall v United Parcel Serv., 76 NY2d 27, 32 [1990] [holding no cause of action exists for negligent administration of a lie detector test, since, inter alia, plaintiff has not suffered a personal injury]; Milliken & Co. v Consolidated Edison Co., 84 NY2d 469 [1994] [electric power supplier not liable to commercial tenants of building for damages resulting from power outage where tenants did not have contractual relationship with power supplier]).
*495 Courts have also drawn a distinction in those instances where a party not in privity with an alleged tortfeasor sues for economic losses. In those instances it has been held that in the absence of actual privity, or a relationship that is so close as to approach privity, there can be no recovery (see, Ossining Union Free School Dist. v Anderson LaRocca Anderson, 73 NY2d 417, 424 [1989] [complaint states a cause of action against consulting engineers hired by plaintiff's engineer in performance of work for plaintiff]; Key Intl. Mfg. v Morse/ Diesel, Inc., 142 AD2d 448, 452-453 [2d Dept 1988] [no cause of action for economic loss against defendant architect by reason of design defects in the absence of privity]; Lake Placid Club Attached Lodges v Elizabethtown Bldrs., 131 AD2d 159 [3d Dept 1987] [owners of condominium units do not have cause of action against building architect for leakage and seepage damage in the absence of privity]).
Generally speaking, there has been a hesitancy on the part of the courts to extend liability beyond reasonable limits (see, Palka v Servicemaster Mgt. Servs. Corp., supra, at 586-587). As stated in Strauss v Belle Realty Co. (65 NY2d 399, 402-403 [1985]):* "But while the absence of privity does not foreclose recognition of a duty, it is still the responsibility of the courts, in fixing the orbit of duty, 'to limit the legal consequences of wrongs to a controllable degree’ (Tobin v Grossman, 24 NY2d 609, 619; see also, Howard v Lecher, 42 NY2d 109), and to protect against crushing exposure to liability (see, Pulka v Edelman, 40 NY2d 781, supra; Ultramares Corp. v Touche, 255 NY 170). 'In fixing the bounds of that duty, not only logic and science, but policy play an important role’ (De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055; see also, Becker v Schwartz, 46 NY2d 401, 408). The courts’ definition of an orbit of duty based on public policy may at times result in the exclusion of some who might otherwise have recovered for losses or injuries if traditional tort principles had been applied.”
Mindful of the Court of Appeals decisions in Eaves Brooks v Y.B.H. Realty (supra) and Milliken & Co. v Consolidated Edison (supra), and the fact that there exist differing public policy considerations when considering property damage actions as opposed to personal injury actions (see, Palka v Servicemaster *496 Mgt. Servs. Corp., supra, at 587), the court cannot conclude that the engineering defendants "assumed a duty to exercise reasonable care to prevent foreseeable harm to the plaintiffs]” (Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra, at 226). Plaintiffs’ remedies, in the court’s view, are more likely to be found in the law of riparian ownership (see, 107 NY Jur 2d, Water, § 11, at 467; 108 NY Jur 2d, Water, § 119, at 37).
The court concludes that the complaint fails to state a cause of action against either Clough Harbour or M.J. Engineering. The motions and cross motions pursuant to CPLR 3211 (a) (7) are granted. The motions pursuant to CPLR 3211 (a) (1) are denied. The complaints are dismissed as to Clough Harbour and M.J. Engineering.

 In Strauss v Belle Realty Co. (supra), the Court of Appeals held that Consolidated Edison was not answerable to the tenant of an apartment building injured in a common area as a result of Consolidated Edison’s negligent failure to provide electrical service as required by its agreement with the building owner.