OPINION OF THE COURT
Christopher G. Quinn, J.
The respondents’ motion to dismiss the within petition and for summary judgment on the within counterclaims, and petitioner’s cross motion to dismiss the respondents’ (Billing & Burke) counterclaims and for summary judgment are decided as follows:
respondents’ motion to dismiss
Petitioner commenced this nonpayment summary proceeding in February 1998, seeking possession of said premises as well as a money judgment for maintenance (rent), use and occupancy and attorney’s fees. Respondents (Billing & Burke) are parties to a residential lease agreement dated April 1, 1985 and claim that the petition served upon them is defective for several reasons and should, therefore, be dismissed.
Respondents’ first argument is that the petition is not signed. However, there is no requirement that the petition be signed *960 {see, RPAPL 741). Therefore, respondents’ third and fourth affirmative defenses are dismissed.
Next, respondents argue that the petition is not properly verified. RPAPL 741 states, in pertinent part, as follows: “The petition shall be verified by the person authorized by section seven hundred twenty-one to maintain the proceeding; or by a legal representative, attorney or agent of such person pursuant to [CPLR 3020 (d)]. An attorney of such person may verify the petition on information and belief notwithstanding the fact that such person is in the county where the attorney has his office.”
Where the agent states her authority to verify the petition, her statement that she has read the petition and knows the contents thereof, etc., is tantamount to an allegation that all of the material facts therein are within her personal knowledge, and is adequate as such for the purpose intended by the statutory requirements. (Reserve Fin. Corp. v Rosen, 127 Misc 591 [Sup Ct, Erie County 1926], affd 218 App Div 811 [4th Dept 1926].) Therefore, the verification of the petition by the managing agent of petitioner was proper and did not result in any prejudice to respondents. As such, respondents’ fifth affirmative defense is dismissed.
Respondents also claim that the petition is defective as it is brought in the name of the managing agent, who is not a proper party to commence this action. However, the petition is clearly brought in the name of “The Barstow Road Owners, Inc.” (Barstow). As owner and lessor of the within premises, Bar-stow is clearly the proper petitioner pursuant to RPAPL 721. Therefore, respondents’ sixth affirmative defense is hereby dismissed.
Respondents next claim that the within notices (the three-day notice and the 10-day notice) annexed to the petition were served upon the respondents by the attorney, or the managing agent, none of whom are allegedly authorized to do so under “the statute”. However, there is no statutory requirement that the within notices be sent by the landlord personally {see, 3 Rasch, New York Landlord and Tenant § 41:29 [3d ed]).
The 10-day notice required by paragraph 31 '(d) of the proprietary lease was sent by petitioner’s attorneys, and indicated that “this firm is counsel to Barstow Road Owners”, the owner of the co-op building, and that “[t]he Board of Directors of [the] coop has authorized [the law firm] to pursue the coop’s legal remedies as against [the respondent]”. The petitioner’s at *961 torneys have been counsel to Barstow for a number of years, including those years when the respondent Burke served on the Board of Directors of Barstow.
The three-day notice clearly indicates that it is being sent by “Barstow Road Owners Inc., Landlord”. While it is signed by Janet Grabowski, a representative of Richland Management, as agent for Barstow, respondents clearly had knowledge that Richland Management was the managing agent of petitioner landlord. The respondents have had repeated dealings with the managing agent and paid their maintenance fees to Richland Management. RPAPL 711 (2) states that a summary proceeding may be commenced after “a demand of the rent has been made, or at least three days’ notice in writing”. There is no requirement that the demand be signed by the landlord. (Yui Woon Kwong v Sun Po Eng, 183 AD2d 558 [1st Dept 1992].)
Therefore, for all the foregoing reasons, respondents’ seventh affirmative defense, which alleges that “the petition is jurisdictionally defective in that all notices * * * were either forwarded by the attorney, or the managing agent, none of whom are authorized under the statute to serve said notices”, is dismissed. Moreover, this court holds that all notices required under the lease and the RPAPL were properly served upon the respondents.
respondents’ counterclaims / affirmative defenses
The court will now address respondents’ affirmative defenses which are also raised as counterclaims.
alleged violation of the fdcpa
The first affirmative defense/counterclaim deals with an alleged violation of the Fair Debt Collection Practices Act (15 USC § 1692 et seq. [FDCPA]). Respondents’ counterclaim is based upon the argument that a properly served three-day notice, as prescribed by RPAPL 711, is violative of the FDCPA, and that respondents should receive a judgment on the counterclaim against the petitioner in the sum of $10,000 based upon this violation. Additionally, respondents argue that the FDCPA requires a 30-day notice of any default, when notice of default is provided by an agent, rather than a three-day notice, thus, the within petition should be dismissed as jurisdiction-ally defective.
ISSUES TO BE DETERMINED
There are several issues that this court will address regarding whether to apply the FDCPA to this summary proceeding. *962 The first is a question of public policy and the purpose of the FDCPA versus the purpose of a summary proceeding.
INTENT OF THE FDCPA
The FDCPA’s purpose is to eliminate abusive debt collection practices and to promote consistent State action in order to protect consumers against those who abuse the debt collection process. (15 USC § 1692e.) Moreover, the Act promotes fair ethical collection practices, by insuring that those debt collectors who do not abuse the collection process will not suffer a competitive disadvantage. (15 USC § 1692e.) The FDCPA, enacted in 1997, was premised on congressional concern that State protection against questionable debt collection practices was insufficient. The primary goal of the FDCPA is to protect consumers from those unscrupulous debt collectors who use abusive, deceptive and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late-night phone calls and simulated legal process.
Specifically, the Act provides that a “debt collector” may not use various “unfair or unconscionable means to collect or attempt to collect” a consumer debt. (15 USC § 1692f.) The Act sets out rules that a debt collector must follow for “acquiring location information” (15 USC § 1692b) about the debtor, communicating about or with the debtor and bringing legal actions. (15 USC § 1692 et seq.) The statute also prohibits false and misleading communications in connection with the collection of a debt. The Act imposes civil liability on debt collectors who violate the Act and contains a provision for attorney’s fees.
The respondent has not set forth any allegations which amount to harassment, deception, threats of violence, etc., the very items outlined by Congress which are the targets of this legislation.
new York’s rpapl
New York law has long provided a mechanism for the efficient resolution of certain landlord-tenant disputes pursuant to RPAPL article 7. Summary proceedings based on nonpayment of rent may be commenced three days after a demand for rent is served on the tenant, and the case may theoretically be resolved in as little as 20 days. A potential conflict arises because Federal law requires that a debt collector give the consumer 30 days to seek validation of the debt.
“[T]he primary purpose and intention of summary proceedings * * * is the ‘speedy and expeditious disposition’ of the is *963 sue as to the right of the landlord to the ‘immediate possession of his real property’ (3 Rasch, New York Landlord and Tenant § 44:1, at 152 [3d ed], quoting Great Park Corp. v Goldberger, 41 Misc 2d 988 [Civ Ct, NY County 1964].) While a landlord may also seek a judgment for back rent, the primary purpose for commencing the summary proceeding is to reclaim “possession” of his real property, not collection of an overdue debt.
It is unlikely that Congress foresaw the FDCPA being used as a vehicle to dismiss a legal proceeding commenced by a landlord under State law to reclaim possession of his/her real property. However, Congress did foresee the possibility that the FDCPA might preempt a State law that gives consumers greater protections than those provided by the Federal statute, and they provided an exemption in such a situation. (15 USC § 1692n.)
The RPAPL, in effect, gives tenants greater protections than they might otherwise have, even if the three-day demand requirement was repealed from the requirements for commencing a summary proceeding. One Federal court Judge has said as much in Travieso v Gutman, Mintz, Baker & Sonnenfeldt (1995 WL 704778 [ED NY, Nov. 16,1995, Weinstein, J.]). Judge Weinstein found that “[t]he quick resolution of disputes under the RPAPL framework satisfies the essence of the FDCPA protection of debtors.” (Supra, at 4.) He realized that “to apply the FDCPA against a law firm engaged in litigation in housing court would essentially preempt New York’s * * * RPAPL * * * a result never intended by Congress in enacting the FD-CPA.” (Supra, at 3.) The intent behind the FDCPA was to provide a private right of action to protect debtors from unsavory collection efforts. New York’s RPAPL provides a mechanism to bring the dispute before a court of record in an expeditious fashion where the rights of all sides to the litigation will be equally protected. Judge Weinstein recognized this very fact when he stated, “[o]nce the dispute reaches the courts, the purposes behind the FDCPA are moot.” (Travieso v Gutman, Mintz, Baker & Sonnenfeldt, supra, at 4.) This court agrees whole-heartedly with Judge Weinstein’s findings.
THREE-DAY DEMAND — COMMUNICATION TO COLLECT A DEBT
Another issue to be resolved by this court is whether the within three-day demand is in fact a communication to collect a debt. It has been argued that the three-day notice may be construed as a litigation paper not subject to the Act.
*964 The RPAPL requires that a three-day notice be served upon a tenant prior to the commencement of a nonpayment summary proceeding brought to recover possession of real property. (RPAPL 711 [2].) In two recent Federal court cases, the defendants (landlords) argued that the three-day demand was not sent for the purpose of collecting a debt, but merely as a requirement of the RPAPL, and should not be subject to the Act. The argument was rejected by both courts. (Romea v Heiberger & Assocs., 988 F Supp 712 [SD NY 1997]; Hairston v Whitehorn & Delman, 1998 WL 35112 [SD NY, Jan. 30, 1998, Martin, J.].) The two Federal District Court cases determined that the statutorily required predicate notice to a summary proceeding, signed by an attorney, is a communication for the purpose of collecting a debt within the meaning of the FDCPA.
The Romea decision was recently certified for interlocutory appeal to the Second Circuit Court of Appeals. (Romea v Heiberger, 988 F Supp 715 [SD NY 1998].) In doing so, the court seemed to rethink some of its pronouncements on New York’s statutory scheme for summary proceedings as they relate to the FDCPA. First, it was noted that there is conflict among the Federal Circuit Courts of Appeals as to whether the FDCPA applies to obligations that do not involve a deferral of payment. Additionally, there is significant difference of opinion as to whether the three-day demand at issue in the case is in fact a communication to collect a debt.
The FDCPA defines debt as “any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes”. (15 USC § 1692a [5].) As the Romea court noted, there is a conflict among the Federal Circuit Courts as to whether an obligation must involve the deferral of payment in order to constitute a “debt” within the meaning of the Act, an issue on which the Second Circuit has not spoken. (Compare, Zimmerman v HBO Affiliate Group, 834 F2d 1163 [3d Cir 1987] [deferral required], with Newman v Boehm, Pearlstein & Bright, 119 F3d 477 [7th Cir 1997] [no deferral required]; and Bass v Stolper, Koritzinsky, Brewster & Neider, 111 F3d 1322 [7th Cir 1997] [same].) As rent typically is payable in advance, the obligation to pay rent is not one involving deferral of payment. An Eleventh Circuit Court held that condominium fees for maintenance of common areas do not constitute a debt under the FDCPA because they arise by contract, are assessed on a regular basis and like rent, do not reflect *965 deferred payments on prior debt. (Azar v Hayter, 874 F Supp 1314 [ND Fla], affd 66 F3d 342 [11th Cir 1995], cert denied 516 US 1048 [1996].)
It is this court’s opinion in the instant case that the three-day demand is not a communication to collect a debt within the meaning of the FDCPA. Firstly, the fees owed to the petitioner by the respondents are cooperative fees for maintenance of common areas, analogous to the condominium fees in Azar (supra). Secondly, the respondent lessees did not even live in the cooperative unit on the dates in question, but leased the premises out to respondent undertenants. Thirdly, the three-day notice was sent in the name of the landlord and not a debt collector and fourthly, the obligation of respondent lessees to pay the maintenance fees to the petitioner did not arise out of “a transaction in which the money * * * or services which are the subject of the transaction are primarily for personal, family, or household purposes”. (15 USC § 1692a [5].) They were the subject of a transaction primarily for “business” purposes, as the respondent lessees had rented the premises out to subtenants. (See, Garza v Bancorp Group, 955 F Supp 68 [SD Tex 1996].)
Finally, the three-day notice was not sent for the purpose of collecting a debt, but merely as a jurisdictional predicate to the commencement of a summary proceeding for nonpayment of rent (maintenance). Although the statute permits an oral demand the failure to serve a proper three-day demand will result in dismissal of the proceeding. (Solack Estates v Goodman, 102 Misc 2d 504 [App Term, 1st Dept 1979].) Additionally, proof of a demand for rent is an essential element of a nonpayment proceeding and a copy of the three-day demand with proof of service must be annexed to the petition and incorporated therein by reference. (1 Arden St. Assocs. v Santana, NYLJ, Oct. 20, 1987, at 12, col 2; RPAPL 711 [2].) Service of the demand must be made in the same manner as the notice of petition and petition pursuant to RPAPL 735. The three-day demand is treated much like a pleading or other court-related document and should therefore be exempt from the FDCPA’s provisions. It is for these reasons, and the safeguards provided under the RPAPL, that Judge Weinstein found that the FDCPA was moot when the issue arose out of litigation such as a summary proceeding.
REMEDY FOR A VIOLATION OF THE FDCPA
A third issue to be addressed by this court relates to the remedy for a violation of the FDCPA. 15 USC § 1692k (a) *966 provides that any debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person in an amount equal to the sum of:
“(1) any actual damage sustained by such person as a result of such failure;
“(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 [and] * * *
“(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney’s fee as determined by the court.”
The respondent lessees herein seek dismissal of this summary proceeding based upon the decision of the New York County Civil Court in Soho Tribeca Space Corp. v Mills (NYLJ, May 13, 1998, at 28, col 6.) The Civil Court found that the three-day demand violated the FDCPA and was therefore “invalid”. It dismissed the summary proceeding on this basis. The court stated that “[t]o allow this three day notice to serve as a sufficient predicate to a nonpayment proceeding would ignore and be in violation of the FDCPA.” (Supra, at 29, col 1.) Based upon the facts of the present proceeding this court disagrees that the cited case is controlling.
The statute, on its face, provides for a statutorily created cause of action which imposes monetary liability upon any debt collector who fails to comply with the FDCPA. It does not provide that one who has been “wronged” can raise such a “failure to comply” as an affirmative defense in an action or proceeding commenced pursuant to a statutorily created State cause of action.
“It is a familiar rule in the construction of statutes that where a new right is created or a new duty imposed by statute, if a remedy is given by the same statute for its violation or nonperformance, the remedy given is exclusive. To the extent that new rights and obligations are created by statute, the vehicle for the enforcement of such rights and obligations is the remedy set forth in the statute [citations omitted].” (97 NY Jur 2d, Statutes, § 248, at 194-195.) It is this court’s view that respondent lessees’ remedy, if any, would be a Federal cause of action based upon the monetary damages outlined in the statute.
Even if the respondents could raise the failure to comply as a defense in a summary proceeding, the only issue that such a defense would effect would be that of a judgment for rent. *967 Certainly, such a failure to comply with the FDCPA would have no impact upon a summary proceeding seeking possession only, or that portion of a nonpayment summary proceeding which seeks possession. A court could grant petitioner a judgment of possession without granting petitioner a monetary judgment (as in the case of a nonpayment summary proceeding which has been commenced by substituted service) (3 Rasch, New York Landlord and Tenant § 45:14 [3d ed]).
Therefore, this court holds that even if the FDCPA were to apply to summary proceedings, a violation of said provisions would not result in dismissal of this summary proceeding. The three-day notice is still valid pursuant to New York law as a condition precedent to seeking a judgment of possession even if it violates the provisions of the FDCPA. A tenant’s remedy, if any, is to commence an action for money only, based upon the alleged violation of the Act.
FDCPA— court’s DETERMINATION
As the United States District Court stated in Romea v Heiberger & Assocs. (988 F Supp 715, 718 [SD NY 1998], supra), “[i]t of course will be for the state courts, at least in the first instance, to determine whether a violation of the FDCPA in an attorney-signed three day notice is a defense to a non-payment proceeding.” This court determines that it is not a defense in this case.
The District Court went on to point out that “[i]n view of the Supreme Court’s holding that violation of the federal antitrust laws is not a defense to an action to recover the agreed price for goods sold and delivered except in the rarest of circumstances, e.g., Kelly v. Kosuga, 358 U.S. 516, 518, 79 S.Ct. 429, 430-31, 3 L.Ed.2d 475 (1959), Bruce’s Juices v. Am. Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947), such a result apparently would be unlikely.” (Romea v Heiberger, supra, at 718, n 12.)
Moreover, this court holds that the provisions of the FDCPA do not apply to a nonpayment summary proceeding commenced in the State of New York, insofar as they relate to a demand for rent made pursuant to RPAPL 711 (2).
For all of the foregoing reasons, respondents’ eighth and ninth affirmative defenses are dismissed, as well as respondents’ first counterclaim.
*968 respondents’ remaining counterclaims and affirmative
DEFENSES
Respondents’ second counterclaim (and 10th affirmative defense) is a cause of action for attorney’s fees. The respondents claim that they successfully defended two prior nonpayment proceedings. However, this is the first nonpayment proceeding commenced by the petitioner against the respondents. The two prior proceedings were commenced by the respondent lessees against the respondent undertenants. (Burke v Shokrian, SP6431/96, SP2076/97.) Further there is no common-law right to attorney’s fees in civil litigation. In order for the respondents to be granted attorney’s fees there must be a statutory or contractual basis for said fees. (Real Property Law § 234; Maplewood Mgt. v Jackson, 113 Misc 2d 142 [Dist Ct, Nassau County 1982].)
Moreover, the Supreme Court action before Justice McCaffrey was commenced by the respondent lessees. Any request for attorney’s fees should have been made in that action before the Supreme Court.
Therefore, respondents’ second counterclaim (10th affirmative defense) is dismissed insofar as it relates to the two prior summary proceedings and the Supreme Court proceeding; insofar as it relates to this proceeding, respondents will be granted attorney’s fees only if this action concludes in respondents’ favor and if proven to the satisfaction of the trial court. Attorney’s fees if appropriate are only available upon the ultimate outcome of the proceedings. (Elkins v Cinera Realty, 61 AD2d 828 [2d Dept 1978].)
Respondents’ third counterclaim (11th affirmative defense) alleges that the petitioner intentionally commenced litigation against the respondent lessees and forced respondent lessees to commence summary proceedings against the undertenants herein, in order to destroy the contractual relationship between the lessees and the undertenants.
As previously outlined, the respondents commenced the previous summary proceedings and the Supreme Court action. The instant summary proceeding, which was commenced by the landlord, is meritorious. Therefore, this third counterclaim is dismissed as without merit.
Respondents’ fourth counterclaim (12th affirmative defense), which seeks damages for prima facie tort, is, likewise, dismissed as without merit, and there being no opposition from respondents to petitioner’s motion to dismiss this counterclaim.
*969 The remaining affirmative defenses of the respondents deal with the doctrines of res judicata and collateral estoppel. It is the opinion of this court that the decision of Justice McCaffrey, insofar as he dismissed Barstow’s counterclaims for lack of a copy of the lease, has little or no impact upon this nonpayment summary proceeding, as his decision on that issue was not on the merits. Therefore, the respondents’ first and second affirmative defenses are dismissed as without merit.
petitioner’s motion for summary judgment
The court will now turn to the petitioner’s motion for an order granting summary judgment against the respondents on the petition herein.
The fact that the petitioner is the owner of the premises is not in dispute. The court has ruled that the notice of petition, the petition, the 10-day notice and the three-day notice were properly served upon the respondents.
Melissa Billing and Peter Burke, the respondent lessees, entered into a written lease with the Barstow Road Owners, Inc., the petitioner, on or about March 19, 1985, hiring the demised premises from petitioner for a term of 60 years, commencing on April 1, 1985 and ending on July 1, 2045. “That by the proprietary lease agreement, said [respondent] lessees agreed to pay monthly in advance on the first day of each and every month, a sum equal to that proportion of the Lessor’s cash requirements for each year, or portion of a year, which the number of shares of Lessor allocated to the apartment bears to the total number of shares of the Lessor issued and outstanding on the date of the determination of such cash requirements [emphasis added].” (See, 10 of Meyer Master’s affidavit contained in petitioner’s motion for summary judgment [which is taken from j[ 1 (a) in proprietary lease agreement].) That said maintenance, or rent, is currently $530.01 per month, payable monthly in advance on the first day of each and every month thereof. The respondent lessees stopped paying the within maintenance fees some time in 1997, and these fees remain due to the petitioner.
Fariborz Shokrian was the subtenant of said premises who entered into possession of the demised premises under a sublease agreement between the respondents on or about March 1, 1994. In accordance with the proprietary lease, respondent lessees agreed not to sublet the whole or any part of the unit, or renew or extend any previously authorized sublease, unless consent thereto shall have been duly autho *970 rized by a resolution of the directors, or given in writing by a majority of the directors. Furthermore, there is no limitation to the right of the directors to grant or withhold consent, for any reason or for no reason, to a subletting.
In a Supreme Court action brought by Melissa Billing and Peter Burke, the respondent lessees, as plaintiffs, against the Bar stow Road Owners, Inc., as codefendant, the Honorable Bernard F. McCaffrey, in his decision dated August 21, 1997, stated: “Plaintiffs’ [Melissa Billing and Peter Burke] application for a declaratory judgment that the ‘modified’ sublease is effective until 3/31/98 is therefore denied. The original 3/1/94 sublease expired on 3/31/97 and the requisite approval of the cooperative’s Board of Directors for the later agreement was not acquired.” Since the Supreme Court action involved the same parties as this action, the parties are precluded from re-litigating this issue. (73 NY Jur 2d, Judgments, §§ 320-326.) In accordance with Justice McCaffrey’s decision, the term for which said premises were sublet and approved by the defendant the Bar stow Road Owners, Inc. expired on March 31, 1997. The respondent lessees renewed the sublease without the consent of Barstow. The respondent undertenants vacated the premises on or about March 31, 1998.
The co-op’s rules provide for a $25 per day charge for each and every day that there are any unauthorized sublets in the building. This charge was first imposed in 1992, after the lease was entered into by the parties. While each shareholder received notice of the new policy, said $25 per day charge is not designated as rent or additional rent in the lease, nor in any other agreement between the parties.
THE court’s DETERMINATION
As the respondent lessees admit that they stopped paying the within maintenance fees some time in 1997, and that these fees remain due to petitioner (see, if 3 in reply affirmation of respondent lessees’ counsel), possession of the premises is awarded to the petitioner.
There are triable issues of fact regarding the issue of monetary damages. Therefore, all parties herein are directed to appear for inquest at a landlord/tenant Part 2 of the First District Court, 99 Main Street, Hempstead, New York, at 9:30 a.m. on September 23, 1998. The petitioner’s cause of action for a money judgment, based upon the “unauthorized sublet charge” of $25 per day, is dismissed without prejudice, as it was not designated as rent or additional rent in the lease be *971 tween the parties. (See, RPAPL 741 [5].) The amount of attorney’s fees awarded to the petitioner will also be determined at inquest.
Issuance of the warrant of eviction to remove the parties from possession of the demised premises shall not be stayed herein, unless respondents pay into court the sum of $5,000 within seven days of the date of this order. If respondents pay said sum into court within said seven-day period, issuance of the warrant of eviction herein shall be stayed until further order of this court.